IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINIOS

| | | |
|---|---|---|
| Best Gay Inc., <br> Plaintiff, | ) <br> ) <br> ) | Case No. |
| v. | ) <br> ) <br> ) | COMPLAINT FOR TRADEMARK INFRINGEMENT |
| Alternative Media Group, LLC, <br> Will Shephard, individual <br> Defendants | ) <br> ) <br> ) <br> ) | Jury Demand |

## Complaint

Plaintiff, Best Gay Inc., ("Best Gay"), hereby brings the present action against Defendants, Alternative Media Group, LLC, ("AMG"), and Will Shephard and alleges as follows:

### Parties

1. Plaintiff, Best Gay, is an Illinois-based corporation that specializes in connecting the gay community to the very best travel, cities, hotels, bars, charities, entertainment, gaming, music, news, and businesses around the world. Plaintiff endorses only the highest-quality, gay-friendly services. Best Gay is owned and operated by Michael Snell and his husband Derrick Sorles, with a principle place of business in Chicago, Illinois.

2. Defendant, AMG, is a Florida-based Limited Liability Company, which provides hard-core pornography services online. AMG is operated principally by Defendant Will Shephard and possibly other unknown individuals, with the principle place of business in Tampa, Florida.

## Jurisdiction and Venue

3. This Court has original subject matter jurisdiction over the claims in this action pursuant to provisions of 15 U.S.C. §§1051 - 1129; 28 U.S.C. §1331; 28 U.S.C. §1338(a) and (b); and supplemental jurisdiction over the state law claims under 28 U.S.C. §1367.

4. This Court has personal jurisdiction over the Defendants as they continuously and systematically sell adult entertainment services under the mark "BEST GAY" to customers located in the State of Illinois, advertises and promotes its services and products under the mark "BEST GAY" to customers and potential customers in the State of Illinois, and Defendants' actions harm Plaintiff's business in Illinois under the Illinois Long Arm Statute 735 ILCS 5/2-209(a).

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391(c) because, upon information and belief, all parties to this action do business in this district, and a substantial part of the events giving rise to the subject claims arose in this district.

## Plaintiff

6. Best Gay Inc., is the exclusive licensee of the mark "BEST GAY", and is owned and operated by Michael Snell his husband Derrick Sorles, with its principal place of business in Chicago, Illinois.

7. Michael Snell the owner of the registered service-mark, "BEST GAY", registration number 4,145,958. The registration is to the word mark, in its entirety, exclusive of any particular font, style, size, or color. Exhibit A.

8. At least as early as June of 2007, Plaintiff began use of the mark "BEST GAY" and hired a graphic designer to create artwork for Best Gay Chicago, Best Gay New York, Best Gay Palm Springs, Best Gay Toronto, Best Gay Puerto Vallarta, and Best Gay Fort Lauderdale logos.

9. Plaintiff purchased their first "BEST GAY" domain in September 2007, and launched their first website in October of 2007.

10. Best Gay Inc. has grown into a small business with an international brand, recognized as promoting only the highest-quality, gay-friendly services. Plaintiff operates many websites, connecting the gay community to the very best travel, cities, hotels, bars, charities, entertainment, gaming, music, news, and businesses around the world. A list of Plaintiff's thirty-one domains is listed in Exhibit B.

11. Plaintiff's websites host approximately 200,000 readers a month.

12. Plaintiff's suite of domains all contain the words "BEST GAY" followed by the topic of the particular site, for example, bestgaychicago.com. Consumers and business-to-business partners familiar with Best Gay sites would likely be confused by other "BEST GAY" domains.

13. Potential business-to-business clients closely examine and evaluate the website contents of endorsement partners. Many will not advertise with Plaintiff if there is any link to, association with, or any sign of pornography.

14. Plaintiff endorses specific storefronts and multi-national corporations in various cities around the world with "Five Pink Crowns", as a recognized symbol of superior, gay-friendly establishments. Businesses receiving Plaintiff's endorsement proudly display an official window sticker, and consumers recognize the "BEST GAY" brand and the level of quality required to gain Plaintiff's endorsement.

15. Plaintiff also sponsors gay charities and fundraising functions, and are prominent members of the gay community. Plaintiff donates thousands of dollars each year in advertising and editorial coverage under the "BEST GAY" brand to many non-profits including groups like Aid Foundation Chicago, Chicago House, TPAN, Aids Walk New York, Broadway Cares in New York City, and National Gay and Lesbian Task Force.

16. Because of Plaintiff's reputation and respect, Best Gay and its principals Snell and Sorels, are often sought out by other entities seeking endorsement. For instance, they have been invited to the country of Andorra to cover the International Ski Week, and we are invited to Miami often to cover the Winter & White Parties.

17. The following corporations, organizations, and businesses have sought out and obtained Plaintiff's "BEST GAY" endorsement: Broughton Hotels, Hyatt Hotels, Axel Hotels in Europe, Jewel Hotels in Europe, American Airlines, Anaheim Convention and Tourism, Las Vegas Convention and Tourism, Dallas Business Guild, Marin County Tourism, Ottawa Tourism, Experience Columbus Ohio, Amazon, Tourism New Zealand, Aid Foundation Chicago, Chicago House, TPAN, Aids Walk New York, Broadway Cares in New York City, and National Gay and Lesbian Task Force.

18. Plaintiff has membership with the International Lesbian & Gay Travel Association, Chicago Area Gay Lesbian Chamber Commerce, National Gay Lesbian Chamber of Commerce, and Gay Ad Network, and has been featured in LGBT news.

## Defendants

19. Defendants, Alternative Media Group, LLC, is a Florida-based Limited Liability Company, operated principally by Defendant Will Shephard and possibly other unknown individuals, with the principle place of business in Tampa, Florida. See Exhibit C.

20. The defendant entity was formed 24 May 2004, and primarily offers adult entertainment services. Specifically, Defendants specializes in hard-core, gay pornography services through various online media.

21. On information and belief, Defendants purchased and owns the following domains, and possibly other domains: destinationmale.com on 4 Sep 2004, gaymenicus.com, gaymenicusblog.com, destinationmale.tv on 16 Sep 2004, men4menlive.com on 9 Sept 2005, men4menlive.tv on 19 Sep 2005, men4menlive.net on 14 Oct 2005, bestgaymuscle.net on 14 Dec 2007, bestgaymuscle.com on 14 Dec 2007, bestgaymuscle.tv on 18 Dec 2007, bestgaymusclelive.com, bestgaylatino.com on 25 Dec 2007, bestgaymuscletube.com on 14 May 2009, bestgaylatino.net on 2 Nov 2009, and bestgaymuscletube.net on 8 Mar 2012. Exhibit D.

22. On information and belief, Defendants initially used other domains to market its pornographic services with marks like "destinationmale" and "men4menlive", and continues to maintain these other brands for their services. However, Defendants did not acquire "bestgaymuscle" and "bestgaylatino" domains and use "BEST GAY" as a trademark until December of 2007, months after Plaintiff's mark began to gain recognition.

23. Beyond the Defendants' capitalization of "BEST GAY" domain names, Defendants also identifies and brands themselves as a "BEST GAY" source on the content of its websites.

24. In 2004, Defendants' principal, Will Shephard, attempted to register the mark "GUIDETOGAYDATING.COM", serial no. 7815308, but abandoned his application after an office action challenged the mark as merely descriptive. In October 2004, Defendant Will Shephard applied for and successfully acquired the mark "DESTINATIONMALE", registration no. 3220588. Exhibit E. Clearly, Defendants understand the requirements of registering a trademark, and the purpose and application of trademark protection.

### Infringing Actions and Facts of the Case

25. On information and belief, Defendants did not begin to seek "BEST GAY" domains until months after Plaintiff's "BEST GAY" marks had begun to gain distinction and recognition in the gay community.

26. Plaintiff filed for the word mark "BEST GAY" on 14 Sep 2011. The examiner requested further examples of use in commerce, but lack of distinctiveness issues were not raised. On 6 Mar 2012, the mark was published for opposition, and no challenges were raised. The mark was issued, without disclaimers or limitations, on 22 May 2012.

27. When establishing quality-control policies pertaining to maintaining trademark rights and brand control, Plaintiff discovered Defendants' use. Plaintiff became concerned with the blatant, hardcore, pornographic images readily on display on Defendants' sites, the confusion created by the similarity of Defendants' "BEST GAY" sites with Plaintiff's suite of "BEST GAY" marks, and the damage that would be caused to Plaintiff's business by such confusion.

28. On their site, bestgaymuscle.com, Defendants' banner reads: "Best Gay Muscle.com: The Site For Those Who Love Hard Naked Men With Muscles." There are hardcore, pornographic images displayed openly on the page. Exhibit F.

29. On their site, bestgaymuscle.net, Defendants' banner reads: "Best Gay Muscle Blog: The Site For Those Who Love Hard Naked Men With Muscles." Defendants identifies themselves in the first, full-text paragraph: "Best Gay Muscle is a Free Gay Muscle Porn Blog." Exhibit G.

30. On their site, bestgaymuscle.tv, Defendants use the title banner "BestGayMuscle" with "TV" added to identify their services. In the first, full-text paragraph of the page, Defendants identifies themselves as the source of the site: "[w]e at BestGayMuscle.tv." This is

one of the few sites where Defendants have a "terms of entry" page instead of displaying hardcore, pornographic images immediately on display to the viewer. Exhibit H.

31. On its site, bestgaymuscletube.com, Defendants identifies themselves, by stating, "Welcome to Best Gay Muscle Tube! Best Gay Muscle Tube is a 100% gay porn tube for gay movies and gay sex videos." See Exhibit I.

32. On the site bestgaymusclelive.com, Defendants identify their service as "BestGayMuscle.com". There are hardcore, pornographic images displayed openly on the page. Exhibit J.

33. On the site bestgaylatino.com, Defendants identify themselves on their banner as "BEST GAY" in clear letters, with "Latino" on the side in a scrolling font. Next to their mark, they declare that they provide "the hottest Best Gay Latino guys on the net". There are hardcore, pornographic images displayed openly on the page. Exhibit K.

34. The domain bestgaylatino.net funnels into the bestgaymuscle.com website. Exhibit L.

35. Defendants' domains seek to capitalize Plaintiff' goodwill, derive value from false association with Plaintiff as the source of origin, and cause harm to Plaintiff's business.

36. Plaintiff sent a cease and desist letter to Defendants on 8 November 2012.

37. In response, Defendants admitted that they use the mark "Best Gay", but disagreed with Plaintiff's right to the trademark "BEST GAY". Exhibit C.

38. On 30 November 2012, Defendants initiated a Petition for Cancellation proceeding with the USPTO's Trademark Trial and Appeal Board ("TTAB"). Exhibit C.

39. At the Discovery Conference and since, Plaintiff has attempted to negotiate a reasonable settlement. Defendants have refused any terms which require AMG to change their

"BEST GAY" domains, despite Plaintiff's concern of likelihood of confusion with their registered mark and Defendants' use.

### Count I: Infringement of Registered Trademark
### 15 U.S.C. §1114(a)

40. Plaintiff owns registered trademark "BEST GAY" which, under section 33 of the Lanham Act (§1115), creates prima facie evidence of validity of the registered mark, the registration, ownership, and exclusive rights.

41. Defendants used the mark "BEST GAY" in their domain names and web content without consent of the Plaintiff.

42. Defendants used and continue to use the mark "BEST GAY" in commerce, in connection with the advertising, offering for sale, distribution, and sale of their services.

43. Defendants' use of "BEST GAY" is a reproduction, counterfeit, or colorable imitation of Plaintiff's mark in connection with Defendants' services.

44. Defendants' use is likely to cause confusion, or to cause mistake, or to deceive the public, in violation of the Lanham Act 15 U.S.C. §1114.

45. Defendants' violation of the Lanham Act 15 U.S.C. §1114 makes Defendants liable to Plaintiff in civil action.

### Count II: Unfair Competition
### 15 U.S.C. §1125(a)

46. In connection with Defendants' services, Defendants use the mark "BEST GAY" in commerce in connection with the sale, offering for sale, distribution, or advertising of Defendants' services.

47. Defendants' words, terms, names, symbols, and devices are likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association with Plaintiff

and Plaintiff's "BEST GAY" services, and as to the origin, sponsorship, or approval of their goods and services by Plaintiff.

## Count III: Cyberpiracy
### 15 U.S.C. §1125(d)

48. Defendants' actions of acquiring, registering, and using "BEST GAY" domain names were made in bad faith and with the intent to profit.

49. At the time of Defendants' actions, Plaintiff's mark and domains had become distinctive.

50. The Defendants' domain names are confusingly similar to Plaintiff's domain names and seek to capitalize on the distinctiveness and goodwill of Plaintiff's reputation.

## Count IV: Illinois Unfair Competition
### 765 ILCS 1036/60(a)

51. As a result of their unauthorized use, Defendants' use is likely to cause confusion or mistake or to deceive the public, in violation of the common law of the State of Illinois, as to the source of origin of such services.

52. Defendants are likely to mislead and to continue to mislead prospective consumers as to an affiliation, connection, or association of Defendants or Defendants' services.

## Count V: Illinois Deceptive Trade Practices
### 815 ILCS 510/3

53. Defendants have caused a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of their services.

54. Defendants have disparaged the services and business of the Plaintiff by false or misleading representation of fact.

<u>Prayer for Relief</u>

55. Plaintiff prays to recover Defendants' profits, any damages sustained by the Plaintiff, and costs of the action for Defendants' infringing uses.

56. Plaintiff prays for injunctive relief of Defendants' infringing uses.

57. Plaintiff prays for a transfer of rights and ownership in Defendants' infringing domains.

58. Plaintiff prays to recover up to treble damages due to Defendants' intentionally counterfeit domain names.

59. Plaintiff prays to recover statutory damages for each type of Defendants' counterfeit domain names.

60. Plaintiff also prays for any other relief that this Court finds appropriate to protect and remedy the Plaintiff's rights.

<u>Jury Demand</u>

61. Plaintiff demands a trial by jury on all matters and issues triable by jury in this action.

Respectfully Submitted on 23 May 2013,

*[signature]*

Genna S. Hibbs (IL Bar no. 6306165)
Hibbs Law, LLC
4850 N. Broadway St, #408259
Chicago, IL 60640
gh@hibbslaw.com
Attorney for Plaintiff